# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL NO. 3:16-CR-42-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| v. ) | |
| ) | |
| ERIC SCOTT TRUESDALE, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress and Incorporated Memorandum of Law," Doc. 110, filed April 15, 2016. The "United States's Response to Defendant's Motion to Suppress," Doc. 118, was filed on April 26, 2016. The Court conducted an evidentiary hearing on June 13, 2016.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and following an evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress be denied, as discussed below.

## I. FACTUAL BACKGROUND AND FINDINGS

Defendant is charged in a multi-count Indictment. The relevant portions of the Indictment allege that between 2004 and August 19, 2015, Defendant conspired with other named individuals to possess with intent to distribute both crack cocaine and powder cocaine in violation of 21 U.S.C. § 846; that on or about February 25, 2015, Defendant aided and abetted and possessed with intent

to distribute powder cocaine in violation of 21 U.S.C. §§841(a)(1) and 841 (b)(1)(C); and that on or about February 25, 2015, Defendant aided and abetted and possessed with intent to distribute crack cocaine in violation of 21 U.S.C. §§841(a)(1) and 841 (b)(1)(C).

During 2015, federal and state law enforcement agents were investigating the distribution of crack and powder cocaine in Monroe, North Carolina. Maurice Dupree Starnes was a target of the investigation. Agents utilized a confidential informant ("CI") to make seven controlled buys of crack cocaine from Starnes. Agents conducted surveillance of Starnes' residence at 2835 Rosemeade Drive during each of the controlled buys. When the CI arranged a buy, Starnes either left from his residence or stopped by his residence prior to delivering the drugs. Agents surmised that Starnes was storing crack cocaine at his residence. On February 25, 2015, agents planned to initiate another controlled buy from Starnes. The CI sent a text message to Starnes asking "What's Good." Starnes replied "I'm go hit bra got to get it first." Agents interpreted Starnes' message to mean that he needed to obtain the drugs first.

Monroe Police Detective Chandler Cathey began surveillance at Starnes' residence around 12:56 p.m. Around 4:30 p.m. Cathey observed Starnes depart the residence in a black Cadillac that had been parked in the driveway. A gray SUV arrived approximately ten minutes later and parked in the driveway. A black female and a black male exited the SUV and went to the front door of Starnes' residence. It appeared that no one was at the residence, and they returned to the SUV. The male was talking on his phone. Starnes returned to the residence a few minutes later in the black Cadillac. The black female and the black male approached the front door again. The male was carrying a plastic bag. The CI had texted Starnes earlier asking "Got ail 1900 u ready for ne come through." Starnes replied around 4:50 p.m. saying "Yea. Whr u at." At 5:04 p.m. the black female and the black male left the residence in the SUV.

Union County Sheriff's Detective Richard Haywood was dispatched to initiate a traffic stop of the SUV. Haywood stopped the SUV on Rocky River Road before it crossed the South Carolina line. Based upon the text messages between the CI and Starnes as well as the surveillance of the two individuals' arrival at the residence, agents believed that drugs had been delivered to Starnes in the SUV. Monroe Police Detective Barney Malone arrived to assist Haywood. Defendant was driving the SUV. The passenger was identified as Gwendolyn Starnes, an aunt of Maurice Dupree Starnes.

Both occupants were ordered to exit the SUV. The Detectives noticed a strong odor of marijuana coming from inside the SUV. Defendant remained seated and Detective Malone ordered him out a second time. As Defendant exited the SUV, he moved his right hand over his waistband and groin area. Malone ordered him to keep his hands visible and place them on the hood of Haywood's vehicle. Defendant held his hands over the hood rather than place them down. He moved his hands towards his groin area again. Malone grabbed Defendant's right hand and began a pat down for weapons. Malone felt a large circular object in Defendant's groin area. He asked Defendant what the object was. Defendant pushed Malone and tried to run. Malone was able to grab him and other detectives assisted in placing him on the ground. Defendant was handcuffed after a brief struggle. Malone searched Defendant's groin area and located a piece of aluminum foil containing 124.8 grams of powder cocaine. Detectives searched the SUV and found $20,940 in cash.

Union County Sheriff's Captain David Linto was also on scene and approached Defendant after events had calmed. Linto asked Defendant if he was all right. Defendant stated that he was fine. Defendant then volunteered that the cocaine and cash were his and did not belong to Ms. Starnes. He also offered to cooperate with law enforcement. Linto also spoke with Ms. Starnes

who admitted smoking a "joint" with Defendant in the SUV. The SUV was subsequently released to her and she was allowed to leave the scene. Defendant was arrested and taken to the Union County Sheriff's Department. After being advised of his Miranda rights, Defendant ultimately admitted delivering cocaine to Starnes' residence and leaving with cash. Defendant also admitted delivering cocaine to Starnes on two previous occasions.

The CI completed a controlled purchase of powder cocaine from Starnes near a Goodwill store in Monroe at around 5:45 p.m. that same evening. The CI paid Starnes $1900.00 for 38.4 grams of powder cocaine. Later that evening, agents executed a search warrant at Starnes' residence and seized 85.9 grams of crack cocaine and $4,465.00.

## II. ANALYSIS

Defendant contends that his Fourth Amendment rights were violated because law enforcement officers lacked reasonable suspicion of criminal activity when they conducted a traffic stop of his SUV. Defendant also contends that the evidence seized and statements attributed to him as a direct result of this unlawful seizure should be suppressed pursuant to the "fruit of the poisonous tree doctrine."

### A. Reasonable Suspicion Standard

An officer may stop and briefly detain an individual for investigative purposes provided there is "reasonable suspicion" based upon articulable facts that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 21 (1968). "Reasonable suspicion" takes into account the totality of the circumstances, including the information known to the officer and any reasonable inferences that may be drawn there from. United States v. Arvizu, 534 U.S. 266, 273-75 (2002); United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011). Terry recognized that "reasonable suspicion" may be grounded in observations by officers of what appears to be criminal conduct. 392 U.S. at 22-23.

The Terry analysis balances the needs of law enforcement and the burden placed upon affected citizens. See United States v. McCoy, 513 F.3d 405, 415 (4th Cir. 2008).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). An officer must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts," establish a reasonable suspicion of criminal activity. Terry, 392 U.S. at 21. When applying this standard, "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993); see also Arvizu, 534 U.S. at 273 (permitting "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"(quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Since the intrusion resulting from an investigative stop is minimal, the reasonable suspicion standard is not an onerous one. See, e.g., United States v. McCoy, 513 F.3d 405, 412-13 (4th Cir. 2008) (experienced officer's observation of vehicles parked briefly in store parking lot where drug sales had previously occurred, then moved to a nearby lot where drug sales had also occurred and where occupant of one vehicle got into the other vehicle for a short time, after which that vehicle left at a high rate of speed as officer approached was sufficient to constitute reasonable suspicion); United States v. Harris, 39 F.3d 1262, 1268-69 (4th Cir. 1994) (officer's observation of man leaving apartment in a vehicle after confidential informant advised drug delivery was imminent constitutes reasonable suspicion to stop vehicle); United States v. Turner, 933 F.2d 240, 242-44

(4th Cir. 1991) (officer with experience in narcotics investigations had reasonable suspicion to stop and determine whether subject was "cooking" illegal drugs after observing her carry cup of water out of convenience store, walk to car, and lean over front seat as if hiding something); United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987) (officer's nighttime observation of man walking away from otherwise deserted area where burglar alarm had just gone off constitutes reasonable suspicion to stop him). However, the officer "must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." Wardlow, 528 U.S. at 123-24.

Facts supporting a finding of "reasonable suspicion" include: (1) presence in a high crime area, United States v. Black, 525 F.3d 359, 365 (4th Cir.), cert. denied, 129 S. Ct. 182 (2008); United States v. Christmas, 222 F.3d 141 (4th Cir. 2000), cert. denied, 531 U.S. 1098 (2001); (2) informant tips, including anonymous tips where there is independent corroboration, Alabama v. White, 496 U.S. 325, 329-30 (1990); United States v. Cortez, 449 U.S. 411, 417-18 (1981); United States v. Perrin, 45 F.3d 869, 871-72 (4th Cir. 1995); (3) lateness of the hour, Lender, 985 F.2d at 154; (4) observation by officers of what appears to be a drug transaction or other criminal conduct based upon their experience, Terry, 392 U.S. at 22-23; Adams v. Williams, 407 U.S. 143, 145 (1972) (even though officers could not see drugs, they were not required to "shrug [their] shoulders and allow a crime to occur" in the absence of probable cause); (5) evasive conduct, United States v. Vaughn, 700 F.3d 705, 711 (4th Cir. 2012)(breathing heavily along with other signs of nervousness) United States v. Smith, 396 F.3d 579, 585-87 (4th Cir.), cert. denied, 545 U.S. 1122 (2005); United States v. Humphries, 372 F.3d 653, 657-60 (4th Cir. 2004); United States v. Tate, 648 F.2d 939, 943 (4th Cir. 1981) (attempt by subjects to hide their faces); (6) "furtive behavior," United States v. Sims, 296 F.3d 284, 285-87 (4th Cir. 2002) (anonymous tip that black male

wearing certain clothing had just fired handgun followed by observation of man fitting description engaged in "furtive behavior" constituted reasonable suspicion); and (7) "observing a bulge . . . in a suspect's clothing . . . even if the suspect was stopped only for a minor [traffic] violation." United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996); see also Black, 525 F.3d at 365.

Once reasonable suspicion exists, officers may detain a person to ascertain his identity and investigate further. See Adams v. Williams, 407 U.S. 143, 145-46 (1972) (police must be allowed to choose a middle ground between arrest and "shoulder-shrugging" when confronted with some suspicion of lawbreaking). Officers may conduct a limited protective frisk as they investigate. Terry, 392 U.S. at 27, 30. They may take such steps as are reasonably necessary to protect their personal safety and preserve the status quo during the stop. United States v. Hensley, 469 U.S. 221, 235 (1985). Thus officers may direct the occupants of a vehicle that has been stopped for a traffic violation to step outside. This rule applies to both drivers, Pennsylvania v. Mimms, 434 U.S. 106, 108-10 (1977), and passengers, Maryland v. Wilson, 519 U.S. 408, 413-14 (1997), and is grounded in the particular dangers officers face when dealing with suspects in vehicles. Officers are not required to give Miranda warnings when asking questions during such a stop-and-frisk or vehicle stop. United States v. Leshuk, 65 F.3d 1105, 1108-09 (4th Cir. 1995); United States v. Sullivan, 138 F.3d 126, 130-32 (4th Cir. 1998). While traffic stops necessarily restrict the driver, they do not, without more, require Miranda warnings. See Berkemer v. McCarty, 468 U.S. 420, 437-39 (1984) (observing that "the usual traffic stop is more analogous to a so-called 'Terry stop'"). The fact that an individual might not feel free to leave during a Terry stop does not convert the stop into a custodial arrest, Leshuk, 65 F.3d at 1109-10, even if there is a show of force, see United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989) (handcuffing did not convert Terry stop into an arrest).

### C. Discussion

Under the collective knowledge doctrine, officers conducting an investigation are entitled to rely on each other's knowledge of facts in determining whether a suspect is committing a crime. See United States v. Wells, 98 F.3rd 808, 810 (4th Cir. 1996)("And, although the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure.").

Here, the CI had arranged a drug transaction with Starnes on February 25, 2015. Based upon surveillance from previous controlled buys, officers were aware that Starnes always left from his residence to deliver the drugs. This led them to conclude that Starnes stored the drugs at his residence. Text messages between Starnes and the CI on the day in question revealed that Starnes needed to obtain the drugs before meeting. During surveillance of Starnes' residence, Detective Cathey observed two individuals later identified as Defendant and Starnes' aunt arrive in a gray SUV. They went to the front door but it appeared that no one was home. Defendant was talking on his phone. Shortly thereafter, Starnes arrived at the residence. Defendant approached the residence again carrying a plastic bag. At 4:50 p.m. Starnes texted the CI asking where he was. Defendant and Ms. Starnes departed the residence at 5:04 p.m. The drug transaction between Starnes and the CI occurred later at 5:45 p.m.

When Detective Haywood initiated the traffic stop, he relied on the collective knowledge of the investigating officers. This knowledge included the previous controlled buys from Starnes, texts between Starnes and the CI about the impending drug transaction, Defendant's arrival at Starnes' residence carrying a plastic bag, and Starnes' departure immediately thereafter. These articulable facts amply support a finding of reasonable suspicion that criminal activity was afoot.

Upon stopping the vehicle, Haywood walked to the passenger side and asked the occupants to roll down the windows. At that time, he smelled marijuana and had probable cause to search the vehicle. United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004)(odor of marijuana emanating from vehicle gave officers probable cause to search vehicle).

Where there is probable cause to believe that a vehicle contains contraband or evidence of a crime, the "automobile exception" also applies and a vehicle that is "readily mobile" can be searched without a warrant. See, e.g. Maryland v. Dyson, 527 U.S. 465, 466 (1999).

### D. Fruit of the Poisonous Tree Doctrine

Defendant also moves to suppress the evidence seized during the stop as well as his subsequent statements to law enforcement pursuant to the "fruit of the poisonous tree doctrine." Evidence seized as a result of an unlawful search and seizure is subject to suppression as "fruit of the poisonous tree." United States v. Wong Son, 371 U.S. 471 (1963). The traffic stop of Defendant's SUV was based upon reasonable suspicion of criminal activity. After detecting an odor of marijuana, officers had probable cause to search the vehicle. Defendant's furtive behavior outside his vehicle also justified a pat down of his person. There were no violations of Defendant's Fourth Amendment rights.

### III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's "Motion to Suppress and Incorporated Memorandum of Law," Doc. 110, be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: July 5, 2016

David S. Cayer
United States Magistrate Judge