UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-CR-00042-10-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| ERIC SCOTT TRUESDALE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress and Incorporated Memorandum of Law" (Doc. No. 110) filed April 15, 2016, the United States' "Response to Defendant's Motion to Suppress." (Doc. No. 118), and the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 158), filed on July 5, 2106, recommending that Defendant's motion be denied. Defendant filed an "Objection" on July 22, 2016. (Doc. No. 169). The United States filed a "Response in Opposition" on August 1, 2016. (Doc. No. 176). After reviewing the briefs, testimony and evidence presented before the magistrate judge, for the reasons set forth, the Court OVERRULES Defendant's objections, ACCEPTS and ADOPTS the M&R, and DENIES Defendant's Motion to Suppress.

**I. STANDARD OF REVIEW**

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider *de novo* any objection to the magistrate judge's recommendation." FED. R. CRIM. P. 59(b)(3). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

1

## II. BACKGROUND

For nearly two years, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Federal Bureau of Investigations, the Union County Sheriff's Office, and the Monroe Police Department conducted a joint investigation into crack and powder cocaine distribution in the city of Monroe, North Carolina. One of the targets of that investigation was Maurice Dupree Starnes and his residence, which Defendant visited on February 25, 2015.

Defendant is charged in a multi-count Indictment. The relevant portions of the Indictment allege that between 2004 and August 19, 2015, Defendant conspired with other named individuals to possess with intent to distribute both crack and powder cocaine in violation of 21 U.S.C. § 846; that on or about February 25, 2015, Defendant aided and abetted and possessed with intent to distribute powder cocaine in violation of 21 U.S.C. §§841(a)(1) and 841 (b)(1)(C); and that on or about February 25, 2015, Defendant aided and abetted and possessed with intent to distribute crack cocaine in violation of 21 U.S.C. §§841(a)(1) and 841 (b)(1)(C).

On April 15, 2016, Defendant filed a Motion to Suppress seeking an order:

> …suppressing any and all evidence resulting from the improper seizure and search conducted on February 25, 2015. The seizure and search of [his] person violated the Fourth Amendment because officers lacked the requisite objectively reasonable suspicion of criminal activity on the part of Mr. Truesdale. …that statements attributed to him as a direct result of this illegal seizure and search also be suppressed, pursuant to the 'fruit of the poisonous tree' doctrine.

(Doc. No. 110). On June 13, 2016, the magistrate judge conducted a hearing and the Government called multiple law enforcement agents who were subjected to cross-examination by Defendant's counsel. Subsequently, the M&R was issued, Defendant timely filed his objections and the United States filed a response. The Court has carefully reviewed the record, the transcription of the suppression hearing, and finds the issues ripe for *de novo* review.

2

### III. FINDINGS OF FACT

Defendant makes a generalized objection of factual insufficiency to support the M&R recommendation to deny his motion to suppress. (Doc. No. 169, para. 6). After conducting a careful review of the M&R, the Court finds no error in, summarily agrees with, and adopts those portions of the M&R to which no objection was raised.

### IV. DEFENDANT'S OBJECTIONS

The Court now turns to Defendant's six specific objection to the M&R and generalized claim related to discovery.

1. *The M&R fails to mention that the initial text "occurred at approximately 1:00 p.m. on February 25, 2016" (sic).*
2. *The M&R states that "around 4:50 p.m." Mr. Starnes texted the CI that he was ready to conduct the drug deal that evening based on witness testimony not phone records.*
3. *Paragraphs five through seven of the "Factual Background" section are irrelevant.*
4. *The M&R failed to include that Mr. Starnes, the suspect under surveillance, had left the residence for approximately twenty minutes prior to the arrival of Defendant.*
5. *The M&R failed to include that when Mr. Starnes left his residence prior to meeting with the CI, he drove towards a road known by law enforcement officers involved in this investigation to be where an indicted co-conspirator resides.*
6. *The M&R incorrectly states that Mr. Starnes immediately departed his residence after Defendant left Mr. Starnes' residence.*

(Doc. No. 169, para. 4). Essentially, the Defendant objects to the magistrate judge's findings to support his argument that certain times are more relevant than others in determining reasonable suspicion, and that the four and a half hours between the CI initiating text to the drug sale is determinative for lack of reasonable suspicion. Defendant objects to not including the time of the 1:00pm text that coincided with the surveillance of Mr. Starnes because Mr. Starnes did not reply that he was ready to sell the drugs until about 4:50pm. Defendant further objects that the evidence was inadequate to show the actual timing of this later text that Mr. Starnes had the drugs because no phone records were presented at the hearing. Presumably, this text could have occurred based

3

on Mr. Starnes getting drugs from someone else because Defendant also objects that the magistrate judge did not include the fact that Mr. Starnes left his residence before Defendant arrived and drove toward a road where another co-conspirator resided, in order to assert that it is possible that Mr. Starnes got his drugs from someone else. Defendant also objects to the magistrate judge incorrectly stating that Mr. Starnes left his residence immediately after Defendant departed because the facts show it was 5:04pm when Defendant departed and the drug sale happened nearly 40 minutes later and the actual drug sale did not occur until around 5:45pm. Defendant also objects to the facts surrounding the traffic stop of the Defendant which occurred after he departed Mr. Starnes residence and before the sale of drugs to the CI presumably because that is information learned after law enforcement decided to stop the Defendant's vehicle. The Court addresses the objections below.

### A. DISCOVERY OBJECTION

Defendant's second objection contains two parts and appears to argue that the United States did not comply with discovery requirements. The Court did not find any indication that the Defendant raised these claims at the hearing before the magistrate judge.

The Defendant is only entitled to the evidence the United States has in its possession, custody, or control, Fed. R. Crim. Pro. 16(a)(1)(E). The government is not required to create items, such as documents or records, not yet in existence. *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973) ("The government cannot disclose what it does not have. . . ."); See United States v. Cameron, 672 F. Supp. 2d 133, 137 (D. Me. 2009) ("Rule 16(a)(1)(E) by its terms is directed to material that the government actually possesses and does not apply to a document until it is created."); United States v. Amaya-Manzanares, 377F.3d 39, 42-43 (1st Cir. 2004) ("Rule 16(a)(1)(E) did not apply to a the document until it was created."); United States v. Kahl, 583 F.2d

1351, 1354 (5th Cir. 1978) (upholding a district court's refusal to grant discovery of government statistical compilations, when such compilations did not exist).

There appear to be no objections or requests for production raised by the Defense at the suppression motion. The evidence at the hearing consisted of screen shots of the CI's cell phone and an audio recording with the CI that recorded the sound of an incoming text message to the CI from Mr. Starnes that he was ready to conduct the drug sale at around 4:50pm. The United States asserts that it has complied with its obligations. (Doc. No. 176, paras. 1, 5). The portion of Defendant's second objection alleging a discovery violation is without merit.

**B. IMPROPER OBJECTIONS TO FACTUAL FINDINGS**

Defendant's first objection is that the M&R "fails to mention that the initial text occurred at approximately 1:00 p.m. on February 25, 2016 (sic)". (Doc. No. 169, para. 4a). The fourth and fifth objections assert that the M&R failed to include two facts that show Mr. Starnes left the residence before the Defendant arrived and drove in the direction of a road where an indicted co-conspirator resided. Id. These are merely conclusory statements and not a proper objection.

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). A party may file written objections to magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1)(C). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. North Carolina Dep't of Health and Human Services, 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections must

5

specifically identify those findings objected to."). "Frivolous, conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at 421. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); see also Jones v. Hamidullah, No. 2:05-2736-PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting a petitioner's objections to a magistrate judge's report were "on the whole without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]."). General or conclusory objections result not only in the loss of *de novo* review by the district court but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003). If proper objections are made, a district court will review the objections under a *de novo* standard. 28 U.S.C. § 636(b)(1)(C). Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

The first, fourth, and fifth objections are comprised of one or two sentences stating a conclusory disagreement with the Magistrate's findings or facts that could have been added. None of the objections set forth a basis for the objection or cite any law or facts to support the objection. As to the first objection, Defendant desires that the fact of 1:00p.m. be included related to timing of an initial text; however, Defendant's second objection is that a time of 4:50p.m. was attributed to a later text but the evidence for both times was the same testimony of Detective Black. Hence, the Defendant appears to adopt the time frame of the initial text. The fourth and fifth objections

are also only reflected in the testimony of the law enforcement agents as to time and duration.

However, turning to the issue of error, it was not error for the magistrate judge to recite every fact from the hearing and the M&R reflects that the magistrate judge was aware of the time frame of the initial text. The second paragraph of the "Factual Background and Findings" ends as follows:

> The CI sent a text message to Starnes asking "What's Good." Starnes replied "I'm go hit bra got to get it first." Agents interpreted Starnes' message to mean that he needed to obtain the drugs first.

(Doc. No. 158, at 2). The third paragraph in the M&R begins:

> Monroe Police Detective Chandler Cathey began surveillance at Starnes' residence around 12:56 p.m. Around 4:30 p.m. Cathey observed Starnes depart the residence in a black Cadillac that had been parked in the driveway. A gray SUV arrived approximately ten minutes later and parked in the driveway.

(Doc. No. 158, at 2). Hence, accepting that the 1:00p.m. timing is undisputed, the M&R confirms that the magistrate judge was aware of the initiation of the drug sale and the several hour delay between the arrival of the Defendant in a grey SUV. Id. The facts related to the travels of Mr. Starnes prior to the arrival of the Defendant do not detract from the determination of reasonable suspicion to stop the Defendant.

Law enforcement was conducting a series of controlled drug purchases that day. Detective Black testified that while doing a separate operation he was informed that a gray Chevrolet Suburban arrived and shortly after that, Mr. Starnes returned to the residence and sent the CI, who was with Detective Black at the time, a text that he was ready to make the drug sale. At the hearing, the prosecution elicited the following testimony from Detective Black:

> Q. What if anything did you learn from Detective Cathey during the time you were conducting the drug transactions with Mr. Elliott?
> A. That Mr. Starnes was not moving much and that during this time a grey Chevrolet Suburban with South Carolina tag had pulled into

7

> Mr. Starnes' residence on Rosemeade.
> Q. After you had concluded the second drug transaction with Mr. Elliott what did you do?
> A. I believe the -- I believe Detective Cathey had informed us that the grey Chevrolet Suburban had arrived as we're finishing up the second transaction with Mr. Elliott. Once they -- the deal was over, and the CI was coming back to the meet location went ahead had all other surveillance units proceed over to Rosemeade Drive so we could possibly follow the grey suburban away and attempt to ID the driver or see where the vehicle was going to go to.
> Q. Why did you have an interest in that grey Suburban at that time?
> A. During the debrief with the CI after the second drug deal with Mr. Elliott's buy had finished doing the debrief and a text had come in on the CI's phone from Mr. Starnes saying that he was ready.
> Q. Ready for what?
> A. Ready to conduct the drug transaction.

(Tr. 10-11). Law enforcement clearly indicated the basis for their interest in the Defendant's vehicle based on the facts that Mr. Starnes conveyed to the CI that he was ready to sell drugs after the Defendant arrived. The timing of the text was collaborated by a recording of the debriefing with the CI when the United States because it recorded the sound of the incoming text from Mr. Starnes.

> Q. Going back to Government's Exhibit 2 [photograph of CI cell phone] when Mr. Starnes says, yeah, where you at. Do you recall what time that text message came in?
> A. Like I said I remember the text message coming in as we were debriefing the CI for Elliott's second buy. I recall it was approximately four fifty p.m. when that message came in and CI showed me.
> Q. Were you able to double check your recollection with anything?
> A. Yes it was.
> Q. What was that?
> A. It was the debrief from Mr. Elliott's buy.
> Q. The recording?

(Tr. at 13-14). The United States entered into evidence as Exhibit 4, a recording of the debriefing between the CI and Detective Black. There was no objection by the Defense to Exhibit 4, nor was

8

there any subsequent challenge to the authenticity of the recording or its time of recording. The prosecutor continued:

> Q. Detective Black, did you hear a dinging noise at the end of that recording?
> A. I did.
> Q. What is that?
> A. That is the text message coming into the CI's phone from Mr. Starnes.
> Q. After the CI received this text message from Mr. Starnes what did you do next?
> A. Again you know notified surveillance tried to get down as quick as they can to set up on the area in attempt to follow this grey Chevrolet suburban Chevrolet try to get the it away from the house so we could identify the driver of the vehicle.

(Tr. at 14) During Cross-Exam, Mr. Smith confirmed that the recording occurred around 4:50pm (Tr. at 31-32). Law enforcement established that their interest in Defendant arose because of his arrival at Mr. Starnes house and the subsequent confirmation from Mr. Starnes that he was ready to sell drugs to the CI. Accordingly, these objections are without merit.

### C. OBJECTIONS TO FACTUAL FINDINGS AND DISCUSSION SECTION

Defendant's second objection is that the M&R states that "around 4:50 p.m." Mr. Starnes texted the CI that he was ready to conduct the drug deal that evening. (Doc. No. 169, para. 4b). "This testimony was based solely on the testimony of Detective Black's recollection. The Government never introduced either the CI or Mr. Starnes' phone records to show the exact time that Mr. Starnes texted the CI that he was ready to perform the drug deal." Id. Defendant appears to raise the claim that the magistrate judge erred in not requiring production of other tangible evidence. In addressing this objection, the Court notes that a reviewing court must take a deferential standard regarding the credibility of witnesses where the magistrate judge sits as trier of fact. See United States v. Stoots, No. 97-4038, 1997 U.S. App. LEXIS 32787, at *2 (4th Cir. Nov. 20, 1997) (unpublished table decision); McNairn v. Sullivan, 929 F.2d 974, 977 n.3 (4th Cir. 1991); United States v. Brooks,

No. 1:05CR248-1, 2006 U.S. Dist. LEXIS 25626, at *3-4 (W.D.N.C. March 15, 2006). Here, the magistrate judge listened to the testimony of the detective, including upon cross-examination, and properly relied on the testimony of the detective in determining the fact of when the text from Mr. Starnes to the CI occurred. As addressed above, this testimony was supported by the recording of the debriefing of the CI which recorded the timing of the text from Mr. Starnes being received by the CI.

At the hearing, the testimony from Detective Black was consistent on direct and cross-examination regarding the timing of the receipt of text messages between the CI and Mr. Starnes at both relevant time frames. Detective Black testified that the initial text between the CI and Mr. Starnes occurred at approximately 1:00pm. (Tr. at 7). This was not the first transaction involving Mr. Starnes and law enforcement agents were already conducting surveillance of Mr. Starnes at the time the initial text was made. (Tr. at 7). Likewise, Detective Black testified that the text indicating that Mr. Starnes was ready to conduct a sale with the CI occurred at approximately 4:50pm. (Tr. at 13). Defense counsel asserts that the magistrate judge did not have the best evidence in the form of the actual phone logs of the text messages (Doc. No. 169). However, where the testimony of the witness was not challenged by Defense and even affirmatively asserted by Defense Counsel in closing argument at the hearing, a credibility determination regarding the testimony of the timing of the texts was unnecessary to determine the facts of the matter.

This objection is without merit and the Court finds as fact that the first text message occurred at approximately 1:00p.m., and the text regarding the drug sale occurred at approximately 4:50p.m.

    **1. Facts and Evidence Obtained Before Stopping Defendant's Vehicle.**

Defendant's sixth objection is that the M&R incorrectly states that Mr. Starnes immediately departed his residence after Defendant left Mr. Starnes residence and that he actually did not leave for approximately thirty minutes to complete the drug sale with the CI. (Doc. No. 169, para. 4f). The Court will review this objection *de novo*.

An officer may stop and briefly detain an individual for investigative purposes provided there is "reasonable suspicion" based upon articulable facts that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 21 (1968). "Reasonable suspicion" takes into account the totality of the circumstances, including the information known to the officer and any reasonable inferences that may be drawn there from. United States v. Arvizu, 534 U.S. 266, 273-75 (2002); United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011). Terry recognized that "reasonable suspicion" may be grounded in observations by officers of what appears to be criminal conduct. 392 U.S. at 22-23. An officer must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts," establish a reasonable suspicion of criminal activity. Terry, 392 U.S. at 21. When applying this standard, "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Since the intrusion resulting from an investigative stop is minimal, the reasonable suspicion standard is not an onerous one. See, e.g., United States v. McCoy, 513 F.3d 405, 412-13 (4th Cir. 2008) (experienced officer's observation of vehicles parked briefly in store parking lot where drug sales had previously occurred, then moved to a nearby lot where drug sales had also occurred and where occupant of one vehicle got into the other vehicle for a short time, after which that vehicle left at a high rate of speed as officer approached was sufficient to constitute reasonable suspicion); United States v. Harris, 39 F.3d 1262, 1268-69 (4th Cir.

1994) (officer's observation of man leaving apartment in a vehicle after confidential informant advised drug delivery was imminent constitutes reasonable suspicion to stop vehicle).

Facts supporting a finding of "reasonable suspicion" include: (1) presence in a high crime area, United States v. Black, 525 F.3d 359, 365 (4th Cir.), cert. denied, 129 S. Ct. 182 (2008); (2) informant tips, including anonymous tips where there is independent corroboration, Alabama v. White, 496 U.S. 325, 329-30 (1990); (3) lateness of the hour, Lender, 985 F.2d at 154; (4) observation by officers of what appears to be a drug transaction or other criminal conduct based upon their experience, Terry, 392 U.S. at 22-23; (5) evasive conduct, United States v. Vaughn, 700 F.3d 705, 711 (4th Cir. 2012)(breathing heavily along with other signs of nervousness); (6) "furtive behavior," United States v. Sims, 296 F.3d 284, 285-87 (4th Cir. 2002); and (7) "observing a bulge . . . in a suspect's clothing . . . even if the suspect was stopped only for a minor [traffic] violation." United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996). Under the collective knowledge doctrine, officers conducting an investigation are entitled to rely on each other's knowledge of facts in determining whether a suspect is committing a crime. See United States v. Wells, 98 F.3rd 808, 810 (4th Cir. 1996)("And, although the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure.").

Here, law enforcement applied its collective knowledge from conducting a series of controlled drug purchases from Mr. Starnes, the observations made that day, including the text messages between Mr. Starnes and the CI. Detective Black directed another law enforcement officer to conduct a stop of the Defendant at approximately 5:30p.m., prior to the actual drug sale

by Mr. Starnes. Detective Richard Haywood was dispatched to initiate a traffic stop on the Defendant based on the collective knowledge of law enforcement and their observations that day.

> Q. … how long did you follow that vehicle, do you know?
> A. Well with the traffic it was around 5:00 heavy traffic about 20, 25 minutes roughly.
> Q. Okay. What happened next?
> A. One of the FBI case officers advised that we had probable cause to stop the vehicle and due to information they received through phone calls and then with the informant to stop the vehicle. I started calling for a marked unit to stop the car as not to burn my vehicle but there was not one close enough to me to stop it before they got in South Carolina soy initiated my lights and siren and stopped the vehicle on rocky river road just across.
> Q. Do you recall who put out the command to stop the vehicle?
> A. It was Detective black.
> Q. When he said that he had probable cause to stop it did he indicate in any way what that was.
> A. Based on the information between the control -- or the informant and Starnes, not having any product beforehand. As soon as the Suburban was leaving he said he's good he was ready to make the sale we have probable cause to believe that Suburban actually brought the product to Starnes.

(Tr. at 65). Detective Haywood's pursuit of the Defendant began when the Defendant left Mr. Starnes' residence. The timing of Mr. Starnes departure from his residence to complete the sale to the CI is not relevant to the determination that law enforcement had reasonable suspicion to stop the Defendant. In further questioning, Detective Haywood also provided evidence that demonstrates law enforcement had probable cause to search the Defendant's vehicle because he detected an odor of marijuana.

> Q. Okay so how did you stop it what happened next?
> A. I turned on my blue lights and siren because my vehicle is equipped with lights and siren.
> …
> Q. What happened next?
> A. I had the driver roll down the window I smelled a strong odor of marijuana inside the car. I had the female passenger step out of the car so I could speak to them about this situation.

(Tr. at 66). Monroe Police Detective Barney Malone arrived to assist Haywood. As noted in the next section, Detective Malone's testimony below is further evidence of probable cause to search the Defendant.

Defendant's sixth objection is aptly noted and the testimony at the hearing is clear that Mr. Starnes did not immediately depart his residence after Defendant departed. However, the officers had adequate factual basis and legal justification to stop the Defendant through collective knowledge. See United States v. Wells, 98 F.3rd 808 (4th Cir. 1996). When Detective Haywood initiated the traffic stop, he relied on the collective knowledge of the investigating officers including the previous controlled buys from Mr. Starnes, texts between Mr. Starnes and the CI about the impending drug transaction, Defendant's arrival at Starnes' residence carrying a plastic bag, and Mr. Starnes' text shortly thereafter that he was ready to make the sale. These articulable facts amply support a finding of reasonable suspicion that criminal activity was afoot. Furthermore, law enforcement leaders gave the order to stop Defendant prior to Mr. Starnes departing his residence for the controlled purchase. Consequently, the Court denies this objection upon *de novo* review of the record.

**2. Facts and Evidence Obtained After Stopping Defendant's Vehicle.**

Defendant's third objection is that paragraphs five through seven of the "Factual Background and Findings" section are irrelevant to the determination of whether or not law enforcement officers had reasonable suspicion to stop Defendant. (Doc. No. 169, para. 4c). The factual recitations in those paragraphs detail the interaction between law enforcement and the Defendant after his vehicle was pulled over by law enforcement shortly after leaving Mr. Starnes' residence. (Doc. No. 158, at 3-4). The magistrate judge in the M&R properly determined that reasonable suspicion existed when law enforcement stopped the Defendant.

The additional facts and evidence arising during the stop were not considered by the magistrate in making the determination that officers had probable cause to believe the vehicle contained contraband.

Once reasonable suspicion exists, officers may detain a person to ascertain his identity and investigate further. See Adams v. Williams, 407 U.S. 143, 145-46 (1972). Officers may conduct a limited protective frisk as they investigate. Terry, 392 U.S. at 27, 30. They may take such steps as are reasonably necessary to protect their personal safety and preserve the status quo during the stop. United States v. Hensley, 469 U.S. 221, 235 (1985). Thus officers may direct the occupants of a vehicle that has been stopped for a traffic violation to step outside. This rule applies to both drivers, Pennsylvania v. Mimms, 434 U.S. 106, 108-10 (1977), and passengers, Maryland v. Wilson, 519 U.S. 408, 413-14 (1997), and is grounded in the particular dangers officers face when dealing with suspects in vehicles.

Where there is probable cause to believe that a vehicle contains contraband or evidence of a crime, the "automobile exception" also applies and a vehicle that is "readily mobile" can be searched without a warrant. See, e.g. Maryland v. Dyson, 527 U.S. 465, 466 (1999); see United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004)(odor of marijuana emanating from vehicle gave officers probable cause to search vehicle).

Detective Haywood testified that he detected an odor of marijuana and had the passenger step out of the vehicle. (Tr. 66). Monroe Police Detective Barney Malone arrived at the scene and had the Defendant step out of the vehicle. On direct examination, he stated:

> Q. Did you observe anything about Mr. Truesdale as he was stepping out?
> A. As he stepped out of the vehicle I backed up making sure I had eye contact with him and I was watching his hand. He took his right hand as he stepped out and he moved it towards his groin or

> waistband area at which point I told him to stop to keep his hands where I could see him at all times.
> …
> A. After I told him to keep his hands where I could see them just for my safety and his safety I didn't know what he was reaching for. I asked him to step back to the front of Detective Haywood's vehicle in between Haywood's vehicle and Mr. Truesdale vehicle.
> Q. Did he do that?
> A. He did.
> Q. What happened next?
> A. As he got back to the vehicle, I asked him if he would place his hands on detective Haywood's truck. He walked back and he placed his hands hovering on the hood but not on the hood.
> …

(Tr. at 75-76). Detective Malone's testimony reflects that law enforcement was observing the Defendant's "furtive behavior." see United States v. Sims, 296 F.3d 284, 285-87 (4th Cir. 2002). Detective Malone further testified:

> A. As he hovered his hands he kept trying to make motions with both his hands to go to waistband groin area and I had to give commands to not do that to keep his hands on the hood. …
> Q. What happened next?
> A. I grabbed his hand placed it on the hood asked him to keep it right there that's when I started searching that immediate area he was trying to reach for not knowing I was going to find a weapon or contraband or whatever he was trying to reach for as soon as I started pat down I felt very large circular object as soon as I felt it I asked him what that was as I was bent over and grabbing his groin area whatever the object was he pushed away from the vehicle pushed me back and he was trying to flee from where I had him detained.

(Tr. at 76). Detective Malone's testimony about the Defendant's behavior is further evidence of probable cause for searching the Defendant because of "evasive conduct." see United States v. Vaughn, 700 F.3d 705, 711.

> Q. How long do you believe the struggle was?
> A. Less than a minute he kept trying to mostly run away from the area and it took three or four of us to try to get him down on the ground.
> Q. Did he eventually get down on the ground?

16

> A. He was forced on the ground by all the detectives involved and trying to get his hands around his back and we eventually got him handcuffed, yes.
> Q. Once you had him Truesdale handcuffed what did you do next?
> A. I went straight to the area that I had located that object just to make sure what it was. And as soon as I conducted my search I found an aluminum foil ball and inside that aluminum foil was plastic inside the plastic was white residue substance like cocaine.

(Tr. at 78). Courts may consider a suspect's evasive behavior in analyzing the existence of reasonable suspicion to believe that an individual is armed and dangerous. United States v. Griffin, 589 F.3d 148, 153 (4th Cir. 2009) (citing United States v. Mayo, 361 F.3d 802, 807-08 (4th Cir. 2004)). Here, the Court finds Detective Malone's basis for his suspicion that a firearm or drugs were present on the Defendant to be reasonable. Based on the evidence at the hearing, law enforcement had probable cause to search the Defendant, whereupon they found contraband on his person and searched his vehicle and recovered approximately $20,000.00.

The M&R, in paragraphs five through seven of the "Factual Background and Findings", details the actions of law enforcement in asking the Defendant to exit his vehicle, to properly search him for weapons after Defendant was acting in a manner that raised the officer's concern for safety, and that Defendant tried to run when being searched. (Doc. No. 158). Defendant's third objection is without merit.

### D. FRUIT OF THE POISONOUS TREE DOCTRINE

The M&R determined that there was no violation of Defendant's Fourth Amendment rights under the "fruit of the poisonous tree" doctrine. Evidence seized as a result of an unlawful search and seizure is subject to suppression as "fruit of the poisonous tree." United States v. Wong Son, 371 U.S. 471 (1963). The Defendant did not raise any objection to this finding by the magistrate judge.

To the extent that this Court has conducted *de novo* review of the other objections, the Court specifically determines that there was reasonable suspicion to conduct the traffic stop of Defendant's vehicle. Law enforcement had reasonable suspicion to stop and speak with Defendant after they watched him meet with someone actively being investigated for drug dealing, who was waiting for a re-supply of illegal drugs to sell to their CI, and, moments after the Defendant met with the suspect, the suspect texted their CI that he was now ready to conduct a drug deal. The Court specifically determines that law enforcement had probable cause to search the vehicle based on an odor of marijuana; and that Defendant's furtive behavior justified searching his person. Consequently, there is no violation of the Defendant's Fourth Amendment rights.

## V. CONCLUSION

IT IS THEREFORE ORDERED that based on the aforementioned reasons and a thorough review of the M&R and the record in this case, the Court ACCEPTS the Magistrate Judge's Memorandum and Recommendation as supported by the record and the conclusions of law are consistent with current case law. (Doc. No. 158). Accordingly, the Court OVERRULES all Defendant's objections and ACCEPTS and ADOPTS the M&R's recommendation that Defendant's Motion to Suppress Evidence (Doc. No. 110) be DENIED.

**SO ORDERED.**

Signed: September 2, 2016

Frank D. Whitney
Chief United States District Judge